IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DENNIS NIMKIE, | ) Civ. No. 12-00350 JMS-BMK |
| | ) (Cr. No.  08-00419 JMS) |
| Petitioner, | ) |
| | ) ORDER (1) DENYING MOTION |
| vs. | ) UNDER 28 U.S.C. § 2255 TO |
| | ) VACATE, SET ASIDE, OR CORRECT |
| UNITED STATES OF AMERICA, | ) SENTENCE BY A PERSON IN |
| | ) FEDERAL CUSTODY; AND |
| Respondent. | ) (2) DENYING A CERTIFICATE OF |
| | ) APPEALABILITY |
| _____ | ) |

**ORDER (1) DENYING MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY; AND (2) DENYING A CERTIFICATE OF APPEALABILITY**

## I.  INTRODUCTION

Currently before the court is Petitioner Dennis Nimkie's ("Nimkie") Motion Under 28 U.S.C. § 2255 to Vacate Sentence, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion").  Doc. No. 65.  On April 18, 2011, Nimkie was sentenced to an eighteen-month term of imprisonment, a one-year term of supervised release, and restitution of $165,117.46.  Doc. No. 58.  Nimkie's § 2255 Motion challenges only the requirement to pay restitution.

For the following reasons, the court DENIES Nimkie's § 2255 Motion and DENIES a certificate of appealability.

## II.  BACKGROUND

Nimkie was indicted on July 17, 2008 and charged with twenty-six

counts of violating 26 U.S.C. § 7206(2), for aiding and assisting in the false

preparation of income tax returns.  Doc. Nos. 1, 58.  On August 25, 2010, Nimkie

pled guilty to Count Four of the indictment pursuant to a plea agreement with the

United States, in exchange for the United States dismissing the other twenty-five

counts.  Doc. Nos. 52, 53.  Each count carried the possibility of a three-year term

of imprisonment.  Doc. No. 53 ¶ 7; 26 U.S.C. § 7206.  In the written plea

agreement, Nimkie agreed, among other matters:

> to pay restitution in an amount to be determined by the
> Court, to the [Internal Revenue Service ("IRS")] for taxes
> not collected from Defendant's clients, and to his former
> clients who were audited, for any interest and other
> monetary penalties assessed by the IRS, as a result of
> Defendant's preparation of their tax returns as filed with
> the IRS.

Doc. No. 53 ¶ 4b.  He agreed that "the penalties for Count 4, the offense to which

he is pleading guilty, include: . . .  b.  restitution pursuant to Title 18, United States

Code, Section 3663(a)(3), in the amount of approximately $165,117.46 for which

the defendant and his clients are jointly and severally liable."  *Id.* ¶ 7.

Further, Nimkie agreed to waive most rights to appeal, or to challenge

his sentence or the manner in which it was determined in any "collateral attack," as

follows:

> [Nimkie] knowingly waives the right to appeal, except as
> indicated in subparagraph "b" below, any sentence within
> the maximum provided in the statute(s) of conviction or
> the manner in which that sentence was determined on any
> of the grounds set forth in [18 U.S.C. § 3742], or on any
> ground whatever, in exchange for the concessions made
> by the prosecution in this plea agreement.
>
> a.  [Nimkie] also waives his right to challenge his
> sentence or the manner in which it was determined in any
> collateral attack, including, but not limited to, a motion
> brought under Title 18, United States Code, Section
> 2255, except that [Nimkie] may make such a challenge
> (1) as indicated in subparagraph "b" below, or based on a
> claim of ineffective assistance of counsel.
>
> b.  If the Court imposes a sentence greater than
> specified in the guideline range determined by the Court
> to be applicable to the Defendant, the Defendant retains
> the right to appeal the portion of his sentence greater than
> specified in that guideline range and the manner in which
> that portion was determined under Section 3742 and to
> challenge that portion of his sentence in a collateral
> attack.

*Id.* ¶ 12.

Nimkie was subsequently sentenced to an eighteen-month term of

imprisonment, followed by a year of supervised release, as well as restitution of

$165,117.46.  Doc. No. 58 at 1-4.  Under the terms of the judgment, restitution is

to be paid to certain victims before any payment to the IRS.  *Id*. at 4.  Essentially, the restitution payments go first to certain former taxpayer clients of Nimkie who were audited, with payments representing penalties and interest that those taxpayers incurred because of underpayment of taxes.  *Id.*; Doc. No. 75-4, Gov't Ex. D at 5.  The balance ($151,260) is restitution owed to the IRS, owed jointly and severally with certain taxpayers identified in the indictment.  Doc. No. 58 at 1; Doc. No. 75-4, Gov't Ex. D at 5-6.[1]

Nimkie did not object to an award of restitution or the restitution amount, either at his change-of-plea hearing or at his sentencing hearing.  *See* Doc. No. 75-3, Gov't Ex. C at 9, 14; Doc. No. 75-4, Gov't Ex. D at 7-8.  Neither did he object to those figures as calculated in his Presentence Report ("PSR") .  Doc. No. 56; PSR at 1A, 2A.  Further, Nimkie did not file a direct appeal.  Doc. No. 65, Mot. at 2.  That is, he did not previously challenge the restitution requirement or the amount of restitution.  And he has now served his term of imprisonment, and is presently on supervised release.  *Id.* at 15.

---

[1]  Although restitution under the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A, does not apply to a violation of 26 U.S.C. § 7206(2), this does not preclude a court from ordering restitution as a condition of supervised release under 18 U.S.C. § 3563(b)(2).  *See United States v. Batson*, 608 F.3d 630, 631-32 (9th Cir. 2010).  Nor does it preclude a court from ordering restitution that -- as is the case with Nimkie's restitution -- is agreed to by the parties in a plea agreement.  *See* 18 U.S.C. § 3663(a)(3).

On June 19, 2012, Nimkie filed his § 2255 Motion "requesting relief of ordered Restitution in the amount of $165,117.46," *id.* at 1, asserting four grounds: (1) "Restitution not apart (sic) of plea agreement," (2) "Ineffectiveness of Counsel at sentencing," (3) "Restitution is based on conjecture not fact of finding," and (4) "Victims restitution a travesty of lodgic (sic)."  *Id.* at 1, 4-7.  The government filed a Response on September 24, 2012, Doc. No. 75, and Nimkie filed a Reply on October 25, 2012.  Doc. No. 77.

### III.  STANDARD OF REVIEW

Title 28 U.S.C. § 2255(a) provides:

> A prisoner in custody under sentence of a court
> established by Act of Congress claiming the right to be
> released upon the ground that the sentence was imposed
> in violation of the Constitution or laws of the United
> States, or that the court was without jurisdiction to
> impose such sentence, or that the sentence was in excess
> of the maximum authorized by law, or is otherwise
> subject to collateral attack, may move the court which
> imposed the sentence to vacate, set aside or correct the
> sentence.

A court may dismiss a § 2255 motion if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief."  R. 4(b) Governing Section 2255 Proceedings.  A court need not hold an evidentiary hearing if the allegations are "palpably incredible or patently frivolous" or if the issues can be conclusively decided on the

basis of the evidence in the record.  *See Blackledge v. Allison*, 431 U.S. 63, 76

(1977); *see also United States v. Mejia-Mesa*, 153 F.3d 925, 929 (9th Cir. 1998)

(noting that a "district court has discretion to deny an evidentiary hearing on a

§ 2255 claim where the files and records conclusively show that the movant is not

entitled to relief").  Conclusory statements in a § 2255 motion are insufficient to

require a hearing.  *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993).  A

petitioner must allege specific facts that, if true, would entitle him to relief.  *See*

*United States v. Rodrigues*, 347 F.3d 818, 824 (9th Cir. 2003) (citing *United States*

*v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996)).

## IV.  **DISCUSSION**

### A.    **The Plea Agreement Bars Any Collateral Challenge, Except One Based on a Claim of Ineffective Assistance of Counsel**

Initially, Nimkie's waiver in his plea agreement expressly precludes

any collateral challenge other than one based on a claim of ineffective assistance of

counsel (or an inapplicable exception regarding a sentence above the guideline

range).  As set forth above, Nimkie specifically waived:

> his right to challenge his sentence or the manner in which
> it was determined in any collateral attack, including, but
> not limited to, a motion brought under [28 U.S.C. §
> 2255], except that defendant may make such challenge
> (1) [on the portions of his sentence greater than that
> specified in the guideline range, if the court imposes such

a sentence], or (2) based on a claim of ineffective
assistance of counsel.

Doc. No. 53 ¶ 12.  This waiver is enforceable here if (1) the language of the waiver

encompasses his right to attack his sentence on the grounds raised, and (2) the

waiver was knowingly and voluntarily made.  *See United States v. Joyce*, 357 F.3d

921, 922-23 (9th Cir. 2004); *United States v. Rodriguez*, 360 F.3d 949, 959 (9th

Cir. 2004).

Based on the totality of the record, the court finds that Nimkie waived

his rights knowingly and voluntarily.  The plea agreement, signed by Nimkie and

his attorney, clearly recites the waiver.  Doc. No. 53 ¶ 12.  During the August 25,

2010 plea colloquy, Nimkie acknowledged that he understood and had spoken with

his attorney about the plea agreement, and that the plea agreement limited his right

to challenge his sentence in any collateral attack with the narrow exceptions.  Doc.

No. 75-3, Gov't Ex. C at 10, 14-16.  Further, during Nimkie's change-of-plea

hearing, the court specifically reviewed with Nimkie the provisions waiving the

right to appeal and to bring a collateral attack to assure he understood the terms.

*Id.* at 14-15.  Nimkie unequivocally stated that he understood what he was waiving

and that he had no questions regarding the waiver.  *Id.* at 16.  After determining

that Nimkie's guilty plea was knowing and voluntary, the court accepted his plea.

*Id.* at 31.

In short, the waiver is enforceable -- Nimkie waived his right to collaterally attack his sentence other than a claim based upon ineffective assistance of counsel.[2]

## B.   Nimkie Cannot Collaterally Attack the Restitution Judgment in a § 2255 Motion

Although Nimkie's waiver of appellate rights permits a claim based upon ineffective assistance of counsel, his § 2255 Motion is nevertheless barred because it does not seek to challenge his "custody."  Rather, his challenge is limited to restitution, and it is well-established that a § 2255 motion is not available for such a challenge.  *See United States v. Kramer*, 195 F.3d 1129, 1130 (9th Cir. 1999) ("[Section] 2255's language clearly and unambiguously limits its applicability to defendants seeking release from custody.  It is not available to those . . . who challenge only fines or restitution orders."); *see also, e.g.*, *Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997) (holding that "§ 2255 is not available to challenge an order of restitution imposed as part of a criminal sentence"); *Blaik v. United States*, 161 F.3d 1341, 1343 (11th Cir. 1998) ("[W]e hold that § 2255 cannot be utilized by a federal prisoner who challenges only the restitution portion of his sentence because § 2255 affords relief only to those

---

[2] Again, the other exception to the waiver (a sentence over the guideline range) is not at issue in these proceedings.

prisoners who 'claim[] the right to be released' from custody.").[3]  Moreover, it

makes no difference if a challenge to restitution is based on ineffective assistance

of counsel.  *See United States v. Thiele*, 314 F.3d 399, 402 (9th Cir. 2002) ("To

determine whether a given claim is cognizable under § 2255, we focus on the relief

sought in the claim itself, not on relief sought in other claims mentioned elsewhere

in the motion. . . .  Nor does it matter that Thiele couched his restitution claim in

terms of ineffective assistance of counsel.").

Given this clear and binding authority, Nimkie's various challenges to

the restitution award (which he agreed to in his plea agreement) are not cognizable

in his § 2255 Motion, whether based on allegations of ineffective assistance of

counsel or otherwise.  The court thus DENIES Nimkie's § 2255 Motion.

## C.     Leave to Amend to Assert Coram Nobis Relief Would be Futile

Although a § 2255 motion challenging a restitution award necessarily

fails, the court recognizes that some authority allows -- in limited situations -- such

relief to be sought under a writ of error coram nobis.[4]  *See Barnickel*, 113 F.3d at

---

[3]  The court notified Nimkie of this authority in granting his request to file a Reply, and required him to address this court's ability (or lack of ability) to grant relief from a restitution order under § 2255.  *See* Doc. No. 76.  He failed to do so in his Reply.

[4]  District courts have authority to issue a writ of error coram nobis under the All Writs Act, 28 U.S.C. § 1651(a).  *United States v. Walgren*, 885 F.2d 1417, 1420 (9th Cir. 1989).  Coram nobis can afford a remedy to attack a conviction even when the petitioner has served his sentence and is no longer in custody.  *Telink, Inc. v. United States*, 24 F.3d 42, 45 (9th Cir.

(continued...)

9

706 (affirming denial of a § 2255 motion seeking to challenge a restitution order, but noting that "the unavailability of relief under § 2255 does not leave a deserving petitioner entirely without recourse" as the Seventh Circuit had "approved the use of a writ of error coram nobis to challenge a restitution order that was based on inaccurate information") (citing *United States v. Mischler*, 787 F.2d 240 (7th Cir. 1986)); *see also, e.g.*, *Kaminski v. United States*, 339 F.3d 84, 90 (2d Cir. 2003) (recognizing "[t]he possible existence of coram nobis" to challenge restitution, but emphasizing that "coram nobis can relieve an individual of the continuing noncustodial effects of a criminal conviction only when *fundamental* errors were made") (Calabresi, J., commenting separately).

Nimkie's Motion is brought solely under § 2255, and does not seek in the alternative to have the court consider his claims under a writ of coram nobis. Nevertheless, the court also recognizes that, in some situations, it may be appropriate to grant leave to amend a deficient § 2255 motion.  *See, e.g.*, *Longa v. United States*, 2011 WL 3882846, at *5 (D. Haw. Sept. 2, 2011) (discussing whether Federal Rule of Civil Procedure 15 applies to § 2255 motions); *United*

---

[4](...continued)
1994).  Specifically, "[t]he writ provides a remedy for those suffering from the 'lingering collateral consequences of an unconstitutional or unlawful conviction based on errors of fact' and 'egregious legal errors.'"  *Walgren*, 885 F.2d at 1420 (quoting *Yasui v. United States*, 772 F.2d 1496, 1498, 1499 & n.2 (9th Cir. 1985)).

10

*States v. Galicia*, 2007 WL 1655849, at *1 (E.D. Cal. June 7, 2007) ("Several courts have thus found that requests to amend § 2255 motions should be evaluated under Rule 15[.]").

The court thus next considers whether it would be futile to allow Nimkie to amend his § 2255 Motion to seek coram nobis relief.  *See, e.g.*, *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004) (reiterating, in a habeas context, that "[f]utility alone can justify the denial of . . . leave to amend") (citation omitted).

**1.     *A Coram Nobis Petition Challenging Restitution Would Be Limited to a Claim Based on Ineffective Assistance of Counsel***

Initially, as with Nimkie's § 2255 Motion analyzed above, a coram nobis petition would fall squarely within the appellate waiver in Nimkie's plea agreement, which waived the "right to challenge his sentence or the manner in which it was determined in *any* collateral attack, including, but not limited to, a motion brought under [28 U.S.C. § 2255], except that defendant may make such challenge . . . based on a claim of ineffective assistance of counsel."  Doc. No. 53 ¶ 12 (emphasis added).  *See Telink*, 24 F.3d at 45 (stating that "a petition for writ of error coram nobis is a collateral attack on a criminal conviction"); *Quisano v. United States*, 2008 WL 351210, at *3 (D. Haw. Feb. 8, 2008) (finding that "the plea agreement's waiver language encompasses his right to collaterally attack through a petition for writ of error coram nobis") (citation omitted).  Thus,

11

Nimkie's only possible coram nobis claim would have to be "based on" ineffective assistance of counsel.  Doc. No. 53 ¶ 12.

Further, a coram nobis petition attacking the amount of restitution would also be barred for Nimkie's failure to raise the issue on direct appeal.  *See United States v. Gianelli*, 543 F.3d 1178, 1184 (9th Cir. 2008) (holding, in an appeal from an order regarding collection of restitution, that defendant "waived his ability to appeal the amount of restitution ordered in the 1987 judgment by failing to file a direct appeal from that judgment"); *cf. O'Neill v. United States*, 369 Fed. App'x 854, 855 (9th Cir. 2010) (mem.) ("Even assuming that O'Neill's challenge to his restitution order could be construed as a petition under 28 U.S.C. § 2241 or a petition for a writ of error coram nobis, O'Neill waived any objection to the validity of restitution order by failing to raise the issue on direct appeal.") (citing *Gianelli*); *United States v. Hatten*, 167 F.3d 884, 887 n.5 (5th Cir. 1999) (reasoning that a restitution portion of a sentence raises a nonconstitutional issue that should have been raised on direct appeal, barring collateral review).

## 2.   *A Coram Nobis Claim "Based on Ineffective Assistance of Counsel" Would be Meritless*

Finally, a coram nobis claim based solely on ineffective assistance of counsel (thus raising an error of potential constitutional magnitude) would clearly fail on the merits.  "*Coram nobis* is an extraordinary writ, used only to review

12

errors of the most fundamental character." *Matus-Leva v. United States*, 287 F.3d 758, 760 (9th Cir. 2002); *see also United States v. Riedl*, 496 F.3d 1003, 1005 (9th Cir. 2007) ("Both the Supreme Court and we have long made clear that the writ of error coram nobis is a highly unusual remedy, available only to correct grave injustices in a narrow range of cases where no more conventional remedy is applicable.") (citations omitted).

To qualify for this extraordinary remedy, Nimkie would have to show that:

> (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character.

*Riedl*, 496 F.3d at 1006 (quoting *Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir. 1987)) (the "*Hirabayashi* requirements").  "Because these requirements are conjunctive, failure to meet *any* one of them is fatal." *Matus-Leva*, 287 F.3d at 760 (citing *United States v. McClelland*, 941 F.2d 999, 1002 (9th Cir. 1991)) (emphasis added).  At minimum, Nimkie's claim would likely fail to meet the last two *Hirabayashi* requirements ("fundamental error" and "adverse consequences"), which the court addresses next.

13

> a. *Fundamental error -- ineffective assistance of counsel*

The last *Hirabayashi* requirement ("error of the most fundamental character") may indeed be satisfied by establishing ineffective assistance of counsel. *See United States v. Mett*, 65 F.3d 1531, 1534 (9th Cir. 1995) (explaining that "[a]n individual no longer in custody may employ the rarely-used writ of coram nobis to make a Sixth Amendment assistance of counsel attack on his conviction"); *United States v. Esogbue*, 357 F.3d 532, 534-35 (5th Cir. 2004) ("[I]neffective assistance of counsel, if proven, can be grounds for *coram nobis* relief."). But here -- under the circumstances where Nimkie pled guilty in return for very specific benefits, and where he attacks only restitution that he knowingly agreed to pay -- an ineffective assistance of counsel claim would be completely meritless.

To prevail on an ineffective assistance claim, a petitioner must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). That is, the petitioner must also show that the deficiency was prejudicial. *Id.* at 692.

14

Counsel "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91. Conclusory allegations of ineffective assistance of counsel made with no factual or legal explanation fall well short of stating a cognizable claim for ineffective assistance of counsel. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("[P]resentation of conclusory allegations unsupported by specifics is subject to summary dismissal.").

Where a petitioner has pled guilty and is asserting ineffective assistance of counsel, the second *Strickland* requirement (prejudice) focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. The petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial (or, in the circumstances of this case, would have pled guilty to all counts in the indictment without a plea agreement). *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Here, Nimkie claims that his counsel was ineffective because (1) she was not aware that the government was going to request restitution; (2) she did not object to restitution at sentencing, and told Nimkie after sentencing that the government would likely not be able to collect it and that the government "cannot touch your [Social Security] benefit;" (3) she failed to object to restitution amounts that were not based on "audited returns;" and (4) she failed to object to restitution to victims who "aided in the preparation of their tax returns," as such restitution is "a travesty of [logic]." Doc. No. 65, Mot. at 6-9; Doc. No. 77, Reply at 3. As set forth below, construing his allegations broadly, Nimkie contends his counsel was ineffective for (1) agreeing to restitution or the amount of restitution, where restitution is not mandatory for violating 26 U.S.C. § 7602; or (2) negotiating for such restitution in exchange for concessions by the government. And these allegations (or plausible inferences therefrom) cannot possibly be construed as meeting a standard for objectively unreasonable representation.

As a starting point, the record flatly contradicts any suggestion that Nimkie or his counsel was not aware that the government was seeking restitution -- indeed, restitution was the centerpiece of a plea agreement in which the

16

government agreed to dismiss twenty-five of twenty-six counts.[5]  *See* Doc. No. 53

¶¶ 4b, 7b; Doc. No. 75-6, Byrne Decl. ¶¶ 8, 10, 11, 18.  When Nimkie pled guilty,

the court carefully and repeatedly reviewed the restitution terms with Nimkie and

his counsel on the record to assure that Nimkie understood and agreed to pay

restitution (including its nature and amount).  In accepting Nimkie's plea, it was

clear to the court that Nimkie understood precisely what he was agreeing to in his

plea agreement.  *See* Doc. No. 75-3.[6]  What's more, Nimkie's counsel asked

---

[5]  By pleading guilty to only one count, Nimkie faced a *maximum* possible sentence of three-years imprisonment.  In contrast, had he been convicted on all twenty-six counts, he faced a maximum possible sentence of seventy-eight years imprisonment.

[6]  At the August 25, 2010 hearing, the following relevant exchanges occurred:

| | |
|---|---|
| The court: | . . . [D]o you [Nimkie] understand that you are required by law in agreeing to the plea agreement to pay full restitution to the United States based on the losses as a result of all of your conduct as set forth in the indictment? |
| Nimkie: | Understood, Your Honor. |
| The court: | Is that right, Mr. Johnson [counsel for the government], that the restitution is based solely on what's in the indictment but beyond Count 4? |
| Johnson: | Yes, Your Honor.  And the only fine point of clarification, which we have put in here in the restitution paragraph and the relevant conduct paragraph, are that some of the individuals he prepared tax returns for were audited, and they paid penalties and fees to the IRS.  And they were forced to make the IRS whole for the balance of the tax due and owing. |
| | Others were never audited and, therefore, some of the amount is due to the IRS, because the tax was never actually paid by the taxpayers, and some is due to the victim filers who were audited and suffered penalties and fees.  So it's a combination of the two. |

(continued...)

[6](...continued)

| The court: | All right.  Do you [Nimkie] understand that? |
| Nimkie: | Yes, I do, Your Honor. |

Doc. No. 75-3 at 9-10.

| Johnson: | . . . .  The defendant and the United States also agree that the defendant will be responsible for the relevant conduct as a result of his willful preparation of tax returns encompassed within all counts of the indictment. |
| | And that would include losses in terms of restitution to both the IRS for taxes not collected as a result of these filings and to former clients of the defendant who are audited and were assessed interest and/or penalties as a result of the improper filing. |
| | . . . . |
| The court: | So, in other words, there's an agreement as to the scope of the relevant conduct for this case, which is the scope of the indictment? |
| | . . . . |
| Johnson: | The defendant has agreed by stipulation pursuant to Section 3663(a)(3) that the approximate amount of restitution due and owing is $165,117.46 and understands that that amount is the amount of restitution that the United States believes he will owe by stipulation. |
| | . . . . |
| | I believe that summarizes the essential terms. |
| The court: | All right.  Ms. Byrne [Nimkie's counsel], do you agree? |
| Byrne: | Yes, I do. |

*Id.* at 13-14.

| The court: | Do you [Nimkie] understand, as already discussed, that you'll have to pay full restitution in this case, whether it be directly to the IRS or to those who, your previous clients, who have since paid those sums to the IRS?  Do you understand that? |
| Nimkie: | Understood. |

*Id.* at 23.

(continued...)

18

the court to take Nimkie's agreement to make restitution into account in seeking a reduced term of imprisonment.  *See* Doc. No. 75-4 at 13 ("We are asking for a year and a day. . . .  He pled guilty.  He doesn't have . . . the automatic restitution doesn't apply to tax cases.  So he agreed to the restitution, and I think that speaks extremely well for him.").[7]  And Nimkie never sought to withdraw from his plea, nor did he instruct his counsel to attempt to appeal his sentence.  Doc. No. 75-6, Byrne Decl. ¶ 15.[8]

Further, Nimkie's counsel's decision to utilize voluntary restitution under 18 U.S.C. § 3663(a)(3) as part of plea negotiations -- to the extent Nimkie is making or could make such a claim -- constitutes a clear "exercise of reasonable

---

[6](...continued)
Moreover, the court made similar inquires at the April 18, 2011 sentencing hearing, where Nimkie personally acknowledged that he had a full and fair opportunity to read, review and discuss the presentence report (which includes detailed calculations regarding the amount and source of the $165,117.46 of restitution), and to file objections (which he did not file as to restitution).  *See* Doc. No. 75-4 at 7-8; Doc. No. 56.

[7]  And when considering the factors under 18 U.S.C. § 3553(a) when imposing sentence, the court did consider Nimkie's agreement to pay restitution.  *See* Doc. No. 75-4, Gov't Ex. D at 21.

[8]  Although the § 2255 Motion does not indicate a specific challenge to the calculation or amount of restitution (or the basis for it), there was an unquestionably valid and proper foundation for the negotiated and agreed-to figure of $165,117.46.  The basis for this amount was substantiated at sentencing, and was detailed in the Presentence Report.  *See* PSR ¶¶ 22-25.  Further, Nimkie's counsel consulted with a retained tax expert regarding restitution, both during plea negotiations and in reviewing the plea agreement.  Doc. No. 75-6 ¶¶ 5, 8-11, Byrne Decl..  As noted earlier, the record clearly indicates that Nimkie was aware that he would be required to make restitution, the exact amount of restitution and the basis for it, and that he knowingly entered into the plea agreement.

professional judgment." *Strickland*, 466 U.S. at 690.  It was a "strategic choice[] made after thorough investigation of law and facts relevant to plausible options," which is "virtually unchallengeable" in a claim for ineffective assistance of counsel. *Id.*

Moreover, even assuming Nimkie's counsel's representation could have fallen below an objective standard of reasonableness (which it did not), an ineffective assistance claim would still fail at *Strickland*'s prejudice prong.  Here, because he pled guilty, Nimkie would also have to show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," *Hill*, 474 U.S. at 59, or, in this case, that he would have pled guilty to all counts without a plea agreement.

But Nimkie has not even argued that he would have sought to proceed to trial (or pled to all counts) if he had known of restitution, or of the full ramifications of the restitution judgment (*e.g.*, that he would have to pay a portion of his Social Security to satisfy it).[9]  He simply seeks to eliminate or reduce the restitution portion of his sentence.  In any event, he has not demonstrated *any*

---

[9]  Nimkie states in his § 2255 Motion that his counsel told him the government "cannot touch" his Social Security in seeking restitution.  Doc. No. 65, Mot. at 6.  Even if counsel's alleged statement (which allegation is disputed, *see* Doc. No. 75-6, Byrne Decl. ¶ 14) to Nimkie was incorrect, however, Nimkie asserts that it was made *after* sentencing and thus could not have been a basis for Nimkie's agreement to pay restitution set forth in his plea agreement.

likelihood that he would have insisted on going to trial to contest all twenty-six

counts of the indictment (or pled guilty to all counts).  Each count carried the

possibility of a three-year sentence, and thus he potentially faced twenty-six

consecutive three-year sentences.  By agreeing to pay restitution, Nimkie received

only an eighteen-month term of imprisonment.  *See Edwards v. United States*,

2007 WL 2325933, at *5 (E.D.N.Y. Aug. 10, 2007) (rejecting an ineffective

assistance of counsel claim challenging restitution -- after concluding the claim

was not allowed under § 2255 -- because there was no indication petitioner would

not have pled guilty where he had pled to only one count of a multi-count

indictment).

In short, a coram nobis petition based on ineffective assistance of

counsel would fail.

### b.   *Adverse collateral consequences*

Lastly, even assuming Nimkie could demonstrate "fundamental error"

by proving ineffective assistance of counsel, a coram nobis claim would

nevertheless likely fail to meet the third *Hirabayashi* requirement ("adverse

consequences").  *See also Yasui*, 772 F.2d at 1498 (indicating coram nobis allows

relief from "lingering collateral consequences of an unconstitutional or unlawful

conviction based on errors of fact"), *superseded on other grounds as noted in*

*United States v. Kwan*, 407 F.3d 1005, 1011 n.2 (9th Cir. 2005).  Ample authority

indicates that "the collateral consequences of overly broad restitution does not

carry the gravity required for *coram nobis* relief."  *United States v. Mirza*, 755 F.

Supp. 2d 329, 333 (D. Mass. 2010); *see also United States v. Craig*, 907 F.2d 653,

660 (7th Cir. 1990) (reasoning that a loss of pension benefits does not constitute a

continuing collateral consequence for purposes of coram nobis relief); *United*

*States v. Iacaboni*, 592 F. Supp. 2d 216, 221 (D. Mass. 2009) ("[T]he weight of

authority appears to hold that an ongoing financial requirement, such as

Defendant's monthly payment obligation here, does not constitute a continuing

'significant collateral consequence.'") (quoting *United States v. Sloan*, 505 F.3d

685, 697 (7th Cir. 2007)).

   Indeed, *Sloan* rejected a coram nobis claim -- similar to the claim

Nimkie would be making -- where the petitioner "somehow fallaciously reasons

that he is prejudiced because he does not want to pay the $638,396.47 in restitution

that he voluntarily agreed to pay."  505 F.3d at 697.  *Sloan* reasoned that the

payment of restitution -- like Nimkie's restitution -- "is the very essence and heart

of the negotiated plea agreement between the government and the defendant which

he willingly and knowingly entered into."  *Id.* at 697-98.

Thus, for a variety of reasons, it would be futile to grant Nimkie leave to amend his § 2255 Motion to assert a writ of error coram nobis.

## V. CERTIFICATE OF APPEALABILITY

In dismissing a § 2255 motion, the court must also address whether Nimkie should be granted a certificate of appealability ("COA"). *See* R. 11 Governing Section 2255 Proceedings (providing that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant"). A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

"The standard for a certificate of appealability is lenient." *Hayward v. Marshall*, 603 F.3d 546, 553 (9th Cir. 2010) (en banc), *overruled on other grounds by Swarthout v. Cooke*, 131 S. Ct. 859 (2011). The petitioner is required to demonstrate only "that reasonable jurists could debate the district court's resolution or that the issues are adequate to deserve encouragement to proceed further." *Id.* (citation and internal quotation marks omitted). The standard "requires something more than the absence of frivolity but something less than a merits determination." *Id.* (internal quotation marks omitted).

The court carefully reviewed Nimkie's assertions and gave him every benefit by liberally construing them. Nimkie had the opportunity to explain his

23

assertions in response to the government's Opposition and evidence.  He cannot, however, avoid the bar to seeking relief from restitution in a § 2255 motion.  And it would be futile to allow an amendment to raise his challenge in a writ of error coram nobis.  The court finds that reasonable jurists could not find the court's rulings to be debatable.  Accordingly, the court DENIES issuance of a COA.

## VI.  CONCLUSION

Based on the above, the court DENIES the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody, FINDS that it would be futile to allow an amendment to seek relief by way of a coram nobis petition, and DENIES a certificate of appealability.

The Clerk of Court shall enter judgment in favor of the United States and close the case file.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 15, 2012.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Nimkie v. United States*, Civ. No. 12-00350 JMS-BMK, Cr. No. 08-00419 JMS, Order (1) Denying Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody; and (2) Denying a Certificate of Appealability